*931 OPINION.
Spepkin :
The petition alleges error on the part of the respondent, (1) in disallowing as a deduction the sum of $2,811.89 which the petitioner had agreed should be taken as a deduction by the Mill Shoals Cooperage Co. from the quoted price of staves purchased from the petitioner in 1920, and (2) in disallowing as a deduction, freight in the sum of $251.06 paid by Fowler & Pay at the request of the petitioner upon a car of staves held in storage by Fowler & Pay.
The evidence discloses that the petitioner, at December 31, 1920, had not received receipted bills for freight and did not know the exact amount of freight which had been paid or which was due. A reserve in the amount of $2,531.89 was set up to cover such freight. This was based upon an estimate calculated by multiplying the standard weight of staves by a specified tariff. The amount so calculated was charged to freight account but was not reflected in the sales account. It is apparent from the evidence that the petitioner kept its books and filed its return upon the accrual basis. A similar situation was being considered in J. S. Hoskins Lumber Co., 3 B. T. A. 846, 854, in which case the taxpayer’s books were kept on the accrual basis, where we said:
Tlie only other question presented by the record herein relates to the reserves set up by the taxpayer on its boohs at the close of the taxable years 1916, 1917, and 1918, to cover freight charges on products that had been shipped but for which freight bills had not been received. Although merely estimates, these reserves were included in the amounts which the taxpayer deducted from gross income in the year 1918, and the effect thereof was that, in computing its net income for the years 1917 and 1918, the taxpayer deducted on account of freight charges $19,580.07 more for the year 1917, and $27,192.56 less for the year 1918, than the amount of such charges actually paid or incurred in those years. These reserves represented an indefinite liability, which could not be determined until the freight was actually paid, and they should not have been deducted by the taxpayer in computing its net income for the years 1917 and 1918. Only the amounts of freight charges actually paid or incurred in those years should have been deducted. The taxpayer’s income for the year 1917 should, therefore, be increased by $19,580.07, and that for the year 1918 should be decreased by $27,190.56.
It is also argued in the petitioner’s brief, although it is doubtful whether such an argument is consistent with the allegations of the petition, that the amount of freight actually paid should be deducted from the amounts of the invoices for such goods. See Henry F. McCreery, 4 B. T. A. 967. In our opinion, however, it is not necessary to discuss this argument, since we believe the petitioner has shown the right to a deduction in 1920 of $2,184.04, the amount of *932 freight charges incurred in 1920 and later paid, as shown by receipted bills in evidence.
With regard to the second assignment of error, no evidence was adduced to show that the petitioner requested Fowler & Pay to pay the freight, that the amount of $251.06 was paid or incurred by the petitioner in 1920, or that the petitioner had received a receipted bill covering freight upon the shipment in question.
It is our opinion that such a deduction has not been proved by the petitioner.

Judgment will l>e entered v/nder Bule 50.